UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDUARDO MONCAYO,

                  Petitioner,

       v.

SUPERINTENDENT GREEN HAVEN
CORRECTIONAL FACILITY,

               Respondent.

**MEMORANDUM & ORDER**
23-CV-01528 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Petitioner Eduardo Moncayo, currently incarcerated at Green Haven Correctional Facility, a New York State prison, petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  ECF No. 1.  For the reasons set forth below, the petition is DISMISSED without prejudice.

## BACKGROUND

Petitioner's conviction and sentence are borne out of events that began, in relevant part, on April 18, 2013, when Pedro Portugal was abducted off the street in Queens and held captive in a nearby warehouse for 33 days.  ECF No. 5-2 at 9, 81; ECF No. 6 at 9.[1]  Over the course of those 33 days, Portugal was beaten and tortured, his tooth was knocked out, and his hand was burned with acid.  ECF No. 5-2 at 81; ECF No. 6 at 9.  While Portugal was in captivity, his captors placed multiple calls to his mother in Ecuador.  ECF No. 5-2 at 88.  In one of those calls, Portugal's captors demanded ransom of three million dollars.  *Id.*  The calls proved significant to

---

[1]  The Court cites to pages assigned by the Electronic Case Files System ("ECF"), except in the case of trial transcripts.  For trial transcripts, the Court cites to the original transcript pages and line numbers.

investigators of Portugal's disappearance; the New York City Police Department ("NYPD") used Mrs. Portugal's phone records to trace the ransom phone calls to an Ecuadorian number, later tied to Petitioner through an accident report filed earlier that year. *Id.* at 16, 24–25, 88–90. Tracking that number, the NYPD ultimately located Portugal and rescued him on May 20, 2013. *Id.* at 21–22, 90–93. The next day, Petitioner was arrested while carrying the phone that the NYPD had linked to him. *Id.* at 22, 94.

Petitioner was charged, under an acting in concert theory, with kidnapping in the first degree (N.Y. Penal Law § 135.25(1)), kidnapping in the second degree (*id.* § 135.10), and assault in the third degree (*id.* § 120.00(1)).[2] ECF No. 5-2 at 9, 82 (charges filed under Queens County Indictment No. 3115/13).

On October 7, 2016, following an 11-day trial, the jury found Petitioner guilty of kidnapping in the first-degree. ECF No. 5-1 at 663. On October 24, 2016, the trial court sentenced Petitioner to an indeterminate prison term of 25 years to life, the maximum authorized under the law. *Id.* at 680.

Petitioner filed a timely notice of appeal from the judgment of conviction asserting that: (1) he was denied effective assistance of trial counsel because his attorney failed to object to inadmissible hearsay evidence that established an otherwise contested element of the kidnapping charge and failed to object when Portugal reversed his identification testimony after conferring with the prosecutor during a recess; (2) his conviction should be reversed in the interest of justice because he was deprived a fair trial when improper hearsay evidence was admitted and then

---

[2]    Before trial, Petitioner's indictment was severed from that of his two co-defendants Christian Acuna and Dennis Alves. ECF No. 5 at 437–38. After Petitioner's trial and sentencing, Acuna and Alves pled guilty to kidnapping in the second degree and were each sentenced to a determinate term of incarceration of thirteen and one-half years. *See* ECF No. 6 at n.3.

exploited by the prosecutor in summation to bolster witness testimony; and (3) his sentence was excessive and the court relied on unproven assumptions about additional criminal conduct. *See* ECF No. 5-2 at 41–72. In a *pro se* supplemental brief filed a few weeks later, Petitioner further argued that his sentence was excessive, and that the sentencing court was vindictive and penalized him for exercising his right to reject a plea and proceed to trial, in violation of state law and the Fourteenth Amendment. *Id.* at 155–65.

On June 9, 2021, the Appellate Division rejected these arguments and affirmed Petitioner's conviction. *People v. Moncayo*, 144 N.Y.S.3d 871 (N.Y. App. Div. 2021).[3] The Appellate Division reasoned that Petitioner's claims regarding ineffective assistance of trial counsel were "based, in part, on matter appearing on the record and, in part, on matter outside the record, and thus, constituted a mixed claim of ineffective assistance." *Id.* Thus, the Appellate Division declined to review Petitioner's "mixed" claim and held that "a CPL § 440.10 [collateral review] proceeding [was] the appropriate forum for reviewing his ineffective assistance claim in its entirety." *Id.* It also held that Petitioner "failed to preserve for appellate review his contention that the sentence imposed by the Supreme Court improperly penalized him for exercising his right to a jury trial, because he did not set forth the issue on the record at the time of sentencing." *Id.* The Appellate Division continued, finding that "the record fails to establish that the court penalized [Petitioner] for exercising his right to proceed to trial," and "the sentence imposed was not excessive." *Id.* Finally, the Appellate Division found Petitioner's remaining arguments unpreserved for appellate review before it declined to reach them under its interest-of-justice jurisdiction. *Id.*

---

[3]      Unless otherwise indicated, when quoting cases, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.

### A. Petitioner's Pro Se Section 440 Motion

In a letter dated June 14, 2021, Petitioner's appellate counsel informed him of the Appellate Division's decision and reminded him of his right to apply for permission to appeal the decision to the New York Court of Appeals. ECF No. 1-2 at 3. Appellate counsel also indicated that he had started drafting a leave application to the Court of Appeals on Petitioner's behalf, and that he would update him on the status of that application. *Id.* Two weeks after appellate counsel's letter, and apparently without consulting or notifying appellate counsel, Petitioner filed a *pro se* Section 440 motion to vacate his conviction and to set aside his sentence, again presenting claims that he was denied the effective assistance of counsel at his trial. *Id.* at 311–21. On July 6, 2021, appellate counsel sought leave to appeal the Appellate Division's decision to the Court of Appeals. ECF No. 5-2 at 265–66. A week later, appellate counsel wrote a letter to Petitioner informing him that he would prepare and file a Section 440 motion on his behalf if the Court of Appeals declined to hear his case, but he would not be able to do so if Petitioner continued to pursue his pending Section 440 motion. ECF No. 1-2 at 306–07. On July 14, 2021, by letter to the Queens County Supreme Court clerk's office, Petitioner withdrew his *pro se* Section 440 motion. *Id.* at 305.

### B. Confusion Surrounding the Leave Application to the Court of Appeals

On October 18, 2021, Petitioner wrote the Court of Appeals to inquire whether it had received the leave application submitted by his appellate counsel. ECF No. 1-2 at 302. Three days later, the court clerk responded to Petitioner and, copying appellate counsel, denied receipt of the application. *Id.* at 301. On October 25, 2021, Petitioner sent another letter, this time to the Appellate Division, inquiring whether it had received the leave application submitted by his appellate counsel. *Id.* at 300. The Appellate Division informed him that it had no record of any such application. ECF No. 5-2 at 291. On November 9, 2021, appellate counsel wrote to the

4

Court of Appeals, enclosed a copy of his July 6, 2021, leave application, which he surmised may have been "lost in the mail," and requested that the Court of Appeals deem the application timely submitted and consider it.  *Id.* at 267.

That same day, Petitioner filed with the Appellate Division a *pro se* petition for a writ of error *coram nobis*, arguing that he had been denied the effective assistance of appellate counsel. ECF No. 5-2 at 280–90.  Three days later, Petitioner wrote to the Court of Appeals requesting relief for allegedly ineffective assistance of appellate counsel because his leave application was not timely filed and appellate counsel failed to assist him with his Section 440 proceedings.  ECF No. 1-2 at 281–84.

On November 18, 2021, the Court of Appeals replied to Petitioner and appellate counsel, acknowledging receipt of the resubmitted leave application and seemingly waiving any potential timeliness bar.  *See* ECF No. 1-2 at 280.  The following day, the Appellate Division replied to Petitioner, acknowledging receipt of his motion for a writ of error *coram nobis*.  *Id.* at 275.

### C.  The Leave Application Arguments and Ruling

On December 3, 2021, appellate counsel submitted a follow-up letter to the Court of Appeals in support of the leave application, reiterating that Petitioner was denied effective assistance of counsel at trial.  ECF No. 5-2 at 269–72.  In that letter, appellate counsel argued that, contrary to the Appellate Division's ruling, there was no need to further develop or consult facts outside the record as to Petitioner's ineffective assistance claim where "there was no strategic or other legitimate explanation" for trial counsel's failures to object to hearsay testimony, to the prosecutor's "flagrant bolstering during summation," or to Portugal's testimony that identified Petitioner as the kidnapper only after Portugal and the prosecutor had a chance to speak during a court recess.  *See id.* at 271.  On December 8, 2021, Petitioner sent another letter to the Court of Appeals requesting a copy of appellate counsel's submissions, reporting that he

5

had not received one.  ECF No. 1-2 at 274.  In a letter dated December 23, 2021, the state

opposed the leave application.  ECF No. 5-2 at 273–75.  On December 31, 2021, the Court of

Appeals denied Petitioner's leave application.  *Id.* at 279; *People v. Moncayo*, 180 N.E.3d 505

(N.Y. 2021).

On January 13, 2022, appellate counsel wrote to Petitioner and informed him the Court of

Appeals denied his leave application.  ECF No. 1-2 at 1.  That correspondence appears to be their

last communication.

### D.  The Petition for Writ of Error Coram Nobis

As mentioned above, when Petitioner learned that the Court of Appeals did not receive

the July 6, 2021, leave application, Petitioner filed a petition for a writ of error *coram nobis*.

ECF No. 5-2 at 280–90.  Petitioner argued that appellate counsel was ineffective when he failed

to timely seek leave to the Court of Appeals and, after he previously advised him to withdraw his

*pro se* Section 440 motion, failed to file a Section 440 motion on Petitioner's behalf.  *Id.*  On

December 22, 2021, appellate counsel filed an affirmation in response to Petitioner's *coram*

*nobis* petition.  *Id.* at 312–17.  Appellate counsel explained that he had timely mailed a letter to

the Court of Appeals seeking leave to appeal the Appellate Division's ruling, and, upon learning

the Court of Appeals never received that letter, immediately resubmitted the application.  *Id.* at

315.  Addressing Petitioner's concerns with the Section 440 proceedings, appellate counsel

indicated he was still willing to file a Section 440 motion on Petitioner's behalf, but he had yet to

do so because, at the time of appellate counsel's affirmation, he was awaiting the Court of

Appeals' decision on the leave application.  *Id.* at 317.  On January 4, 2022, the state filed its

opposition to Petitioner's writ of error *coram nobis*.  *Id.* at 318–35.  Petitioner filed a reply on

January 12, 2022, reasserting his initial claims and further advancing his argument that appellate

counsel was ineffective for raising unpreserved claims on direct appeal.  *Id.* at 336–38.  In a

letter to the Appellate Division dated February 1, 2023, Petitioner requested an update on his *coram nobis* petition. ECF No. 1-2 at 240. Based on this Court's review of the record, it appears that Petitioner never received a response, and his *coram nobis* petition is still pending before the Appellate Division.

*E. The Instant Habeas Petition*

On February 21, 2023, Petitioner timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges the state proceedings on several grounds: First, he challenges the constitutionality of his trial, arguing that he was denied the effective assistance of trial counsel. *Id.* at 7–8. Second, he challenges his sentence, claiming the sentencing judge acted "vindictively" when he allegedly penalized Petitioner for exercising his right to a jury trial. *Id.* at 6. Third, he challenges his appellate proceedings, alleging that his appellate counsel was ineffective. *Id.* at 4–5. Given that Petitioner reiterates "the federal constitutional claims brought on direct appeal by assigned counsel" in the instant proceeding, *id.* at 7, the Court liberally construes his petition to adopt additional arguments advanced by his appellate counsel, which includes claims that: (1) the sentencing court relied on unproven assumptions about additional criminal conduct concerning the kidnapping; (2) in light of his lack of criminal history, Petitioner's sentence of 25 years to life was excessive and should be reduced in the interest of justice; and (3) the Appellate Division should have reversed the conviction in the interest of justice because the trial court admitted improper hearsay evidence. ECF No. 5-2 at 66–71.

Respondent submitted an opposition on May 15, 2023, ECF No. 6, and on May 30, 2023, Petitioner filed a reply, that included a request that the Court hold his petition in abeyance if considering dismissing it for failure to exhaust his state court remedies. ECF No. 9 at 5–6.

# **LEGAL STANDARD**

### A. *Deferential Standard of Review*

Federal courts apply the standard of review set forth in 28 U.S.C. § 2254, as amended by

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), to determine whether a

petitioner in state custody is entitled to a writ of habeas corpus.  It provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of
>> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law only if "the state

court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or

the state court arrived at a different result "when presented with facts that are materially

indistinguishable from a relevant Supreme Court precedent."  *Evans v. Fischer*, 712 F.3d 125,

132 (2d Cir. 2013).  The writ may also be granted if a state court decision is an "unreasonable

application" of clearly established federal law, meaning that "the state court identifies the correct

governing legal principle from [Supreme Court] decisions but unreasonably applies that principle

to the facts of the prisoner's case."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

Reviewing courts are especially deferential to a state court's application of general rules.  *See

Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway

[state] courts have in reaching outcomes in case-by-case determinations.").

Apart from a state court's adjudication of a claim that was an unreasonable application

of, or contrary to, clearly established federal law, a district court may grant a writ of habeas

corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal courts presume that a state court's determination of the facts is correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1). "A state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

### B. Exhaustion Requirement and Procedural Default

A district court shall only review a writ of habeas corpus if "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Second Circuit has adopted a "two-stage inquiry for determining whether the requisite exhaustion has occurred." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981).

First, the petitioner must have fairly presented his "federal constitutional claim to an appropriate state court." *Id.* "A federal habeas petitioner may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution by stating his constitutional claim clearly enough so that a court can easily discern its basis." *Christopher v. Connolly*, No. 06-cv-1575, 2013 WL 1290810, at *7 (E.D.N.Y. Mar. 28, 2013). However, a petitioner's state court claim must have raised "[the same] factual and . . . legal premises" as the federally asserted claim and must have been presented in a way that was "likely to alert the [state] court to the claim's federal nature." *Daye v. Att'y Gen. of the State of New York*, 696 F.2d 186, 191–92 (2d Cir. 1986).

Second, after "having presented his federal constitutional claim to an appropriate state court, and [after he has been] denied relief, the petitioner must . . . utilize all available mechanisms to secure appellate review of the denial of that claim." *Klein*, 667 F.2d at 282.

9

"Although a petitioner need not petition the United States Supreme Court by writ of certiorari, the state prisoner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them." *O'Neal v. New York*, 465 F. Supp. 3d 206, 214–15 (E.D.N.Y. 2020). "Specifically, petitioner must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Id.* at 215; *see also Daye*, 696 F.2d at 192 ("The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."). If a petitioner has done so and relief is denied, the petitioner has "thereupon unsuccessfully employ[ed] all the state appellate procedures available for review of such denial" and "satisfied the exhaustion requirement." *Klein*, 667 F.2d at 283.

Finally, a federal court may not review federal claims that "the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). Those claims are considered "procedurally defaulted in state court." *Id.* "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the merits of those claims in the first instance." *Id.* at 527–28.

## C.  *Timeliness and Statutory Tolling*

As a threshold matter, individuals in state custody seeking federal habeas relief are subject to a one-year statute of limitations under AEDPA.  AEDPA prescribes a limitations period of one year from the latest of four circumstances, the most common being "the conclusion of direct review or the expiration of time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). However, Section 2244(d)(1)(A) is correctly read as beginning to run after the ninety days

during which a person convicted of a crime might petition the Supreme Court for a writ of certiorari, which constitutes the actual "expiration of time for seeking [direct] review." *See Clay v. United States*, 537 U.S. 522, 529–30 (2003). As a result, individuals incarcerated by state authorities are permitted fifteen months from the conclusion of direct review to petition a federal district court for a writ of habeas corpus.

In general, the one-year statute of limitations period runs from the date on which the state criminal judgment becomes final." *Best v. N.Y.C. Police Dep't Sex Offender Unit*, No. 20-cv-2382, 2020 WL 2933441, at *3 (E.D.N.Y. June 3, 2020); *see* 28 U.S.C. § 2444(d)(1)(A). However, "the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not counted toward the one-year limitations period. 28 U.S.C. § 2244(d)(2). Accordingly, the applicable one-year limitations period is tolled for periods of time during which a properly filed application for state post-conviction relief is pending. *See id.* However, filing a post-conviction motion does not reset the one-year statute of limitations and allow it to run anew. *See id.*; *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("Proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins.").

### D.  Pro Se Petitioner Consideration

Where a petitioner is proceeding *pro se*, as is the Petitioner here, their pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *O'Neal*, 465 F. Supp. 3d at 216; *see also*, *e.g.*, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). "Nonetheless, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law." *Gutierrez v. Capra*, No. 14-cv-6887, 2019 WL 1508454, at *7 (E.D.N.Y. Apr. 5, 2019).

**DISCUSSION**

In his petition, Petitioner alleges that:  (1) he was denied the effective assistance of counsel at trial; (2) his sentence was a vindictive penalty for exercising his right to a jury trial; (3) the sentencing judge relied on unproved assumptions concerning the kidnapping; (4) his sentence was excessive; (5) his conviction should be reversed in the interest of justice because the trial court admitted improper hearsay evidence; and (6) he was denied effective assistance of appellate counsel.  ECF No. 1 at 3–8.  Respondent counters that Petitioner's ineffective assistance of trial and appellate counsel claims are unexhausted, and also meritless because he received effective representation from his lawyers.  ECF No. 6 at 17–21.  With respect to Petitioner's sentencing claims, Respondent contends that these claims are meritless and exhausted but, as a matter of first principles, barred from federal review because the state court rejected the claim under the contemporaneous-objection rule, which is an independent and adequate state procedural bar.  *Id.* at 22–29.  Respondent urges the Court find the petition "mixed" (containing exhausted and unexhausted claims) and then to dismiss it.  ECF No. 6 at 18–20.  In his reply, Petitioner requests the Court stay his petition while he attempts to exhaust his state court remedies.  ECF No. 9 at 5–6.

I.      **Exhaustion Status of Petitioner's Habeas Claims**

*A.  Petitioner's Ineffective Assistance of Trial Counsel Claim Is Unexhausted*

Petitioner argues that he was denied effective assistance of counsel at his trial when his attorney "failed to object to inadmissible testimonial and documentary evidence that established an otherwise contested element of the [kidnapping] and failed to object when the complainant and sole eye-witness reversed his identification testimony after conferring with the prosecutor during a recess."  ECF No. 1 at 7–8.  Respondent contends that this claim is unexhausted because, although Petitioner raised his ineffective assistance of trial counsel claim with the

Appellate Division and the Court of Appeals, he failed to pursue it through post-conviction

collateral review under Section 440, as directed by the Appellate Division, which declined to

reach the claim's merits.  ECF No. 6 at 18–19 (citing *People v. Moncayo*, 195 A.D.3d at 750).

Respondent is correct that Petitioner still has state court remedies to exhaust because, "a

defendant may collaterally attack a conviction by filing a motion to vacate judgment pursuant to

CPL § 440.10."  *Dale v. Russell*, No. 24-cv-143, 2025 WL 486686, at *5 (E.D.N.Y. Feb. 13,

2025).  "In New York, the applicable review process for an ineffective assistance of counsel

claim depends on the nature of the alleged attorney error underlying the claim."  *Rios v. Miller*,

No. 17-cv-2256, 2020 WL 4003607, at *2 (S.D.N.Y. July 15, 2020).  "To properly exhaust a

claim that relies on errors or omissions that are apparent from the record of trial or pretrial

proceedings, petitioner must raise such claim on direct appeal to the Appellate Division and then

seek leave to appeal to the Court of Appeals."  *Id.*  "In contrast, to properly exhaust an

ineffective assistance of counsel claim that relies on evidence outside the pretrial and trial record,

petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek

leave to appeal to the Appellate Division."  *Id.*  "When presented with an ineffective assistance

of counsel claim containing both matters amenable to resolution based on the record and matters

that are not, courts have required that all claims be reviewed collaterally so that counsel's

representation can be evaluated as a single cause of action."  *Id.*[4]

---

[4]    The state trial court must deny a Section 440 motion to vacate a judgement when "the
ground or issue raised upon the motion was previously determined on the merits upon an appeal
from the judgment."  *See* N.Y. Crim. Proc. Law § 440.10(2)(a)).  The court must also deny the
motion to vacate when "the judgment is, at the time of the motion, appealable or pending on
appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon
the motion to permit adequate review thereof upon such an appeal *unless* the issue raised upon
such motion is ineffective assistance of counsel."  *See id.* § 440.10(2)(b) (emphasis added).

Here, the Appellate Division deemed Petitioner's ineffective assistance of trial counsel claim to be "mixed" as it involved matters appearing both in and outside the trial record, and concluded that a Section 440 motion, not a direct appeal, was the appropriate forum for review. *Moncayo*, 144 N.Y.S.3d at 871.  In the leave application to the Court of Appeals, appellate counsel contended there was no need to develop or consult facts outside the record because the current record clearly demonstrated that "there was no strategic or other legitimate explanation for counsel's failure to object to [Detective] Rodriguez's hearsay testimony, to the Social Work Consult, to the prosecutor's flagrant bolstering during summation, or to Portugal's revised identification testimony."  ECF No. 5-2 at 271.  The Court of Appeals declined to hear this argument.[5]

After the Appellate Division denied his motion, Petitioner initially filed a *pro se* Section 440 motion, but upon advice from appellate counsel, he withdrew that motion before it could be decided.  ECF No. 1-2 at 305–07, 311.  Petitioner has yet to file a new Section 440 motion, as directed by the Appellate Division, despite learning that his leave application was denied in January 2022.  *Id.* at 1.

Moreover, Petitioner may still file his Section 440 motion at any time because there is no statutory time limit.  *See* N.Y. Crim. Proc. Law § 440.10(1) ("At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ."); s*ee also O'Neal*, 465 F. Supp. 3d at 215–16 (finding petitioner's non-record based claims of ineffective assistance of counsel unexhausted, but not procedurally barred,

---

[5]    Appellate counsel surmised that the Appellate Division determined there was an off-the-record conversation between trial counsel and the prosecutor regarding the prosecutor's conversation with the eyewitness complainant (*i.e.*, Portugal) during a recess.  ECF No. 1-2 at 3. In the instant petition, Petitioner does not challenge the Appellate Division's determination that a Section 440 motion was the appropriate vehicle for review or that this claim was "mixed."

because a state remedy was still available under Section 440.10).  Therefore, as long as Petitioner may utilize an available state court remedy by filing a new Section 440 motion, his claim that he was deprived of the effective assistance of trial counsel is unexhausted.

### B.  Petitioner's Ineffective Assistance of Appellate Counsel Claim is Also Unexhausted

Petitioner also argues he was deprived effective assistance of appellate counsel.  ECF No. 1 at 4–5.  Respondent contends that this claim is also unexhausted.  ECF No. 6 at 14–15.  Under New York law, allegations of ineffective assistance of appellate counsel are reviewed through petitions for a writ of error *coram nobis* made to the Appellate Division.  *See People v. Bachert*, 509 N.E.2d 318, 319 (N.Y. 1987) ("A common-law *coram nobis* proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel"); *see also Turner v. Miller*, 124 F. App'x 682, 683–84 (2d Cir. 2005) ("The proper vehicle for advancing the ineffectiveness claim for his attorney's failure to file the notice of appeal is a coram nobis petition to the Appellate Division.").  If a *coram nobis* petition is denied by the Appellate Division, a defendant may seek leave to appeal that decision to the New York Court of Appeals.  *See Monroe v. Griffin*, No. 16-cv-4788, 2023 WL 4665792, at *5 (E.D.N.Y. July 20, 2023); *see also People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004) (explaining that pursuant to CPL § 450.90, the Court of Appeals may choose to review "appellate orders granting or denying coram nobis relief based on claims of ineffective assistance or wrongful deprivation of appellate counsel").  Therefore, ineffective assistance of appellate counsel claims are deemed exhausted only if they are first raised in a *coram nobis* petition with the Appellate Division, and if denied, then presented in an application to the Court of Appeals seeking leave to appeal the Appellate Division's ruling.  *See Brooks v. Sticht,* No. 20-cv-1108, 2022 WL 1190456, at *6 (W.D.N.Y. Apr. 21, 2022).

Here, Petitioner filed a *pro se* petition for a writ of error *coram nobis* with the Appellate Division in November 2021, arguing that his appellate counsel was ineffective because he failed to file a timely application for leave to appeal the Appellate Division's denial of his direct appeal and because he failed to assist with Petitioner's Section 440 proceedings. ECF No. 5-2 at 280–90. In December 2021, appellate counsel submitted an affirmation in response to Petitioner's *coram nobis* petition, wherein he explained how the confusion with the leave application was resolved and presented his reasoning for not yet filing a Section 440 motion on Petitioner's behalf. ECF No. 5-2 at 312–17; s*upra* at 6-7. The Court understands that the *coram nobis* petition is still pending before the Appellate Division. If the claim is ultimately denied, the Court of Appeals must also hear an application for leave to appeal the Appellate Division's ruling for it to be exhausted. Until then, Petitioner's ineffective assistance of appellate counsel claim remains unexhausted.

### C. Petitioner's Excessive Sentencing Claim and Section 470.15(3)(c) Claim Are Exhausted but Non-Cognizable for Federal Habeas Review

With respect to Petitioner's exhausted claims, the Court addresses Petitioner's excessive sentencing and Section 470.15(3)(c) claims before turning to his final two claims. First, his excessive sentence claim is exhausted because it was raised with the Appellate Division, which found the sentence imposed was not excessive, and the Court of Appeals denied leave to appeal this claim. However, Petitioner's excessive sentence claim does not provide a basis for federal habeas relief. A claim for a reduction in sentence does not raise a federal constitutional question and is therefore non-cognizable on habeas review. *See Holmes v. Yehl*, No. 22-cv-870, 2024 WL 1836074, at *3–5 (E.D.N.Y. Apr. 26, 2024) (finding petitioner's renewal of his reduced sentence claim that he made to the state appellate court unreviewable for habeas purposes); *Santiago v.*

*Shanley*, No. 20-cv-3530, 2023 WL 3321665, at *3 (E.D.N.Y. May 8, 2023) (denying

petitioner's renewed reduced sentence claim brought under state law).

Second, through appellate counsel, Petitioner requested reversal of his conviction in the

interest of justice because the trial court admitted improper hearsay evidence (the same evidence

referred to in the ineffective assistance of counsel claim) in violation of the United States

Constitution and New York law.  ECF No. 5-2 at 66–67.  The Appellate Division did not

explicitly address this argument, instead it left this claim and other remaining claims

unpreserved, declining to reach them under its interest-of-justice jurisdiction.  *Moncayo*, 144

N.Y.S.3d at 871.  The Court of Appeals denied leave to appeal these claims, rendering them

exhausted.  *See* ECF No. 5-2 at 279.  Exhaustion notwithstanding, these claims are non-

cognizable.  Although Petitioner invoked the federal Constitution in connection with this claim,

his request sought reversal under Section 470.15(3)(c) of New York's Criminal Procedure

Law—a state-law remedy.  Petitioner's argument that the Appellate Division should have used

its interest-of-justice authority to reverse his conviction does not raise a federal constitutional

question and is, therefore, not cognizable on habeas review.  *See Davidson v. Cunningham*,

No. 16-cv-1125, 2017 WL 3738560, at *18 (E.D.N.Y. Aug. 29, 2017); *Ponder v. Conway,* 748

F. Supp. 2d 183, 197 (W.D.N.Y. 2010) (finding that petitioner's claim Section 470.15(3)(c) was

"at most…a violation of New York state statutory law" and therefore not subject to Federal

habeas review)*.

> ### D.  Petitioner's Vindictive Sentencing Claim and Unproven Assumptions Claim Are Exhausted but Potentially Face a Procedural Bar

Petitioner has also exhausted his vindictive sentencing claim and his unproven

assumptions claim.  With respect to the vindictive sentencing claim, Petitioner argues that he was

"penalized for exercising his right to a jury trial," ECF No. 1 at 6, and that the sentencing court

acted "vindictively" when it penalized him for exercising his right to reject a plea and proceed with trial, in violation of the Fourteenth Amendment. ECF No. 5-2 at 155–64. The Appellate Division found this claim unpreserved because Petitioner did not raise the issue on the record at the time of sentencing and "in any event, the record fails to establish that the court penalized the defendant for exercising his right to proceed to trial." *Moncayo*, 144 N.Y.S.3d at 871. Petitioner also claims that the sentencing court relied on unproven assumptions about additional criminal conduct concerning the kidnapping. ECF No. 5-2 at 68–70. Although the Appellate Division did not address this claim directly, it found Petitioner's remaining arguments were unpreserved for appellate review, and it "declined to reach them in the exercise of [its] interest of justice jurisdiction." *Moncayo*, 144 N.Y.S.3d at 871.

And, here too, the Court of Appeals denied leave to appeal these claims,[6] rendering these claims exhausted. *See* ECF No. 5-2 at 279.

Though Petitioner exhausted these claims, they are potentially barred by an independent and adequate state-law ground. Indeed, "even if a federal claim is timely and exhausted, a federal habeas court will not review it on the merits if the last-reasoned state court decision addressing the claim rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Rosario v. Laclair*, No. 20-cv-5475, 2024 WL 4476165, at *6 (S.D.N.Y. Oct. 11, 2024). "This principle serves to ensure that state-court judgments are

---

[6]    Appellate counsel did not explicitly raise these sentencing claims with the Court of Appeals, but he did request leave to appeal "all federal and state constitutional issues raised in his appeal to the Appellate Division." *See* ECF No. 5-2 at 272. This was sufficient. *See Robinson v. Superintendent, Green Haven Corr. Facility*, No. 21-cv-7218, 2024 WL 4933363, at *4 (E.D.N.Y. Oct. 21, 2024) ("In New York, fair presentation of a claim to the Court of Appeals, the state's highest court, requires a petitioner to seek review of that claim by the Court of Appeals; a petitioner may do so in a concise letter application seeking review of all issues raised in his Appellate Division brief."), *report and recommendation adopted*, 2024 WL 4932747 (E.D.N.Y. Dec. 2, 2024).

accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *McCoy v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, No. 21-cv-2924, 2025 WL 1548857, at *6 (E.D.N.Y. May 30, 2025).

"A state court ruling is independent if it fairly appears primarily to rest on a state-law ground." *Rosario*, 2024 WL 4476165, at *6. And, "such a state-law ground is adequate if it is firmly established and regularly followed by the state in question." *Id.* When a state court relies on an independent and adequate procedural bar, it "forecloses habeas review even if the state court also rejected the claim on the merits in the alternative." *McCoy*, 2025 WL 1548857, at *6. Indeed, "in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In order to demonstrate cause:

> the prisoner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage.

*Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022). To be sure, "attorney error is an objective external factor providing cause for excusing a procedural default" but "only if that error amounted to a deprivation of the constitutional right to counsel." *Davila*, 582 U.S. at 528. Under such circumstances, "an error amounting to constitutionally ineffective assistance is imputed to the State and is therefore external to the prisoner." *Id.* Alternatively, the fundamental miscarriage of justice exception applies to a "narrow class of truly extraordinary

cases [that] consists of those presenting credible and compelling claims of actual innocence."

*Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

The prohibition against considering claims for habeas relief that have been procedurally defaulted, and the related rules for determining when a procedural default is excused, are not defined in AEDPA because procedural default is an equitable doctrine created by the Supreme Court prior to AEDPA's enactment and subject to adjustment at the Supreme Court's discretion. *Martinez v. Ryan*, 566 U.S. 1, 13 (2012).  Nevertheless, the procedural default doctrine continues to apply even after AEDPA, and "a federal court must deny relief to a state habeas petitioner who fails to satisfy either the Court's "equitable precedents" (*e.g.*, its rules regarding procedural default), "or AEDPA."  *Brown v. Davenport*, 596 U.S. 118, 134 (2022).

Here, the Court need not reach the question of whether a procedural bar prohibits Petitioner from raising his right to trial and unproven assumption claims because those claims are exhausted.  When those claims are considered in conjunction with Petitioner's other claims, Petitioner presents a petition with four exhausted claims (his sentencing-related and interest-of-justice claims) and two unexhausted claims (his ineffective assistance of counsel claims).  In the vernacular, Petitioner presents a "mixed petition" (*i.e.*, a petition with at least one exhausted claim and at least one unexhausted claim).  Courts confronted with a mixed petition may choose one of four paths forward:  "(1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits; (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims."  *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017).  Because Petitioner couples his mixed petition with a request that the Court

issue a stay and hold his petition in abeyance if his claims are deemed unexhausted, ECF No. 9 at 5, the Court evaluates that option first.

## II.    Petitioner's Motion to Stay

Petitioner specifically requests that the Court stay his petition to allow him to exhaust his unexhausted claims. *Id.* For the reasons set forth below, Petitioner's request is denied.

The Supreme Court has cautioned that stays of habeas petitions containing unexhausted claims should not be "employed too frequently," because doing so would frustrate the "objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings" and "AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Consequently, the Supreme Court has directed district courts to stay the adjudication of mixed petitions and hold them in abeyance until all claims are exhausted only if: (1) "petitioner has good cause for his failure to exhaust;" (2) the unexhausted claims are not "plainly meritless"; and (3) petitioner has not "engaged in intentionally dilatory litigation tactics." *Id.* at 277–78.

Although the Supreme Court does not define "good cause" in *Rhines*, "lower courts have determined that it requires a showing of either (1) some factor external to the petitioner that gave rise to the default or (2) reasonable confusion, which is more forgiving and incorporates the petitioner's subjective reasons for the delay in seeking state relief." *Martinez v. Mariuscello*, No. 16-cv-7933, 2017 WL 2735576, at *2 (S.D.N.Y. June 23, 2017). Because Petitioner failed to show "good cause" to excuse his failure to exhaust his ineffective assistance of counsel claims, his motion to stay is denied.

With respect to Petitioner's ineffective assistance of trial counsel claim, he has not demonstrated any external factor that prevented him from refiling his Section 440 motion, nor has he demonstrated that reasonable confusion led to his failure to refile his Section 440 motion.

A liberal construction of Petitioner's reply suggests that he is arguing there was "good cause" for his failure to exhaust his ineffective assistance of trial counsel claim because his appellate counsel failed to file a Section 440 motion on his behalf, ECF No. 9 at 7, but the Court is not persuaded by Petitioner's attempt to shift the blame to appellate counsel.  As an initial matter, Petitioner only has a constitutional right to counsel for his direct appeal, not for his collateral appeal.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further.").  Moreover, a petitioner cannot claim constitutionally ineffective assistance of counsel occurred during state collateral proceedings.  *See Bethany v. Noeth*, No. 20-cv-6761, 2023 WL 3051248, at *6 (W.D.N.Y. Apr. 24, 2023).[7]

Here, because Petitioner has no constitutional right to counsel in his state collateral review, appellate counsel's alleged errors in failing to file a collateral review motion are not considered an external factor excusing Petitioner's obligation to file a Section 440 motion, whether that be through counsel or *pro se*.  *See Kelsey v. Lewin*, No. 21-cv-348, 2023 WL 9316847, at *23 (N.D.N.Y. Mar. 28, 2023), *report and recommendation adopted in full*, 2024 WL 194006 (N.D.N.Y. Jan. 18, 2024) ("Petitioner had no right to counsel submitting a § 440.10 motion on his behalf, and he may not seek habeas relief on this basis.").  Further, the record does

---

[7]    Similarly, when addressing "cause" for a procedural default, the Supreme Court has made clear that "because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default."  *Davila*, 582 U.S. at 524.

not demonstrate that appellate counsel was the reason why Petitioner has still failed to file a Section 440 motion. The Court understands that Petitioner withdrew his initial *pro se* Section 440 motion after appellate counsel advised him that he could only assist Petitioner with that motion after direct appeal was complete. ECF No. 1-2 at 306–07. But this appears to be sound advice; appellate counsel did not want Petitioner to be barred from filing any future motions. *See* N.Y. Crim. Proc. Law § 440.10(3)(c) (providing that "the court may deny a motion to vacate a judgement when…upon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so"). Once the direct appeal failed and the leave application was denied, it appears that Petitioner made no attempts to file another Section 440 motion with the trial court, nor does it appear that he attempted to refile the one he withdrew. Even if Petitioner is still relying on appellate attorney's previous assertions that he would help him file a Section 440 motion, that does not prevent Petitioner from now seeking appellate counsel's help, or from filing a *pro se* Section 440 motion. *Duwe v. Bell*, No. 20-cv-5403, 2021 WL 4480555, at *2 (E.D.N.Y. Sept. 30, 2021) (no good cause where, "even assuming counsel misled petitioner" about filing his Section 440 motion, "petitioner offers no explanation" for not filing that motion *pro se*.). Notably, Petitioner is not time-barred from filing such a motion; Section 440 motions do not have any time limitations. *See* N.Y. CPL § 440.10(1) (noting that a defendant may make a motion "at any time after the entry of a judgment"); *see also Murphy v. Warden of Attica Corr. Facility*, No. 20-cv-3076, 2022 WL 1182043, at *2 (S.D.N.Y. Apr. 19, 2022) (finding petitioner's mistaken belief about his Section 440 motion "were the consequence of petitioner's own lack of familiarity with the law" and "do not amount to good cause under *Rhines*").

Nor has Petitioner demonstrated reasonable confusion led to his failure to refile his Section 440 motion. Despite Petitioner's insistence on blaming appellate counsel for not filing that motion on his behalf, Petitioner has not demonstrated reasonable confusion as to his ability to file such a motion, whether through counsel or *pro se*. *See Holguin v. Lee*, No. 13-cv-1492, 2013 WL 3344070, at *3 (S.D.N.Y. July 3, 2013) (finding it "clear" that petitioner "was not reasonably confused as to the exhaustion of his claims" when "he explicitly states in his motion that he is seeking a stay of his habeas petition so that he can exhaust his unexhausted claims in New York state court").

With respect to Petitioner's ineffective assistance of appellate counsel claim, Petitioner argues that his inability to exhaust this claim is a consequence of the fact that his *coram nobis* petition is still pending. Of course, the Second Circuit has held that the exhaustion requirement may be excused "where there has been substantial delay in the state criminal appeal process" that renders the state appeals process ineffective. *Roberites v. Colly*, 546 F. App'x 17, 19 (2d Cir. 2013). However, Petitioner does not demonstrate that the delay in adjudication of his *coram nobis* petition, which has been pending with the Appellate Division for nearly four years, rendered the process ineffective.

To assess whether delay excuses exhaustion, courts consider the criteria articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), regarding the right to a speedy trial, including: (1) the length of the delay; (2) the reason for the delay and the party responsible; (3) whether petitioner asserted his right to a decision; and (4) prejudice to the defendant. *See e.g.*, *Mayo v. Montagari*, No. 22-cv-6489, 2024 WL 1332634, at *3–4 (E.D.N.Y. Mar. 28, 2024) (applying *Barker* criteria and acknowledging that petitioner "experienced inordinate delays in his state-court review process, which could render that process ineffective as he seeks to vindicate his

federal constitutional rights before he completes his sentence," but declining to find an exception to the exhaustion requirement, considering petitioner appeared to abandon his state remedies and terminated his relationships with two sets of counsel).

Here, it is unclear why Petitioner's *coram nobis* petition is still pending with the Appellate Division, but Petitioner has not sufficiently shown that his failure to exhaust this claim is the result of "good cause."  Petitioner has demonstrated only the length of time that the *coram nobis* petition has been pending—he does not demonstrate the reason for the delay or the responsible party, does not demonstrate that he asserted his right to a decision, and does not demonstrate prejudice by the delay.  Because "appellate delay by itself" is not "grounds for habeas relief," *Matthis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991), Petitioner has not met his burden for seeking a stay.  If the *coram nobis* petition was stayed (as hypothesized by Petitioner, *see* ECF No. 2 at 4, 6) or was overlooked by the Appellate Division because the Court of Appeals decided to find the leave application timely, Petitioner may inquire about its status (and Petitioner has already demonstrated that he is capable of inquiring about the status of pending proceedings, *see* ECF No. 1-2 at 240; *supra* at 4-5).  And, Petitioner still has adequate time to inquire about the status of his *coram nobis* petition before filing a new petition with this Court, if he so chooses.  Petitioner also neglects to show that he has been prejudiced by the delay.  The pending *coram nobis* does not necessarily prejudice Petitioner; as long as the coram nobis is *sub judice*, relief is still available.[8]  In any event, it is Petitioner's burden to demonstrate the delay

---

[8]    The Court notes that AEDPA's one-year filing deadline is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment is pending."  28 U.S.C. § 2244(d)(2).  The Supreme Court has held that "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process."  *Wall v. Kholi*, 562 U.S. 545, 553 (2011).  In the Second Circuit, "the phrase 'pertinent judgment' has repeatedly been held to refer to the

prejudiced him.  He has not made such a showing.  When considering the *Barker* factors together, there is an insufficient basis to excuse Petitioner's failure to exhaust his ineffective assistance of appellate counsel claim.  *See Francois v. Warden of Sullivan Correctional Facility*, No. 12-cv-5333, 2014 WL 1153920, at *4 (E.D.N.Y. Mar. 19, 2014) ("Given that the petitioner has a *coram nobis* application currently pending," the court does not "perceive an obvious need for a stay.").

For both of his unexhausted claims, Petitioner does not show the requisite good cause to excuse his failure to exhaust them before bringing the instant petition.  His ineffective assistance of trial counsel claim is unexhausted not because of an external factor or reasonable confusion, but because Petitioner has neglected to take the necessary and available steps to file a Section 440 motion.  His ineffective assistance of appellate counsel claim is unexhausted because of an administrative delay that, while potentially frustrating, does not render the state process ineffective.  Without good cause to excuse either unexhausted claim, the Court denies his request to stay and hold this petition in abeyance.

---

petitioner's conviction and sentence." *Santana v. Griffin*, No. 17-cv-3827, 2018 WL 1229860, at *4 (S.D.N.Y. Mar. 7, 2018) (citing *Collins v. Ercole*, 667 F.3d 247, 250 & n.3 (2d Cir. 2012)). The Second Circuit has also found that the "filing of certain state court collateral attacks on a judgment, including New York *coram nobis* petitions, tolls AEDPA's one-year statute of limitations." *Davis v. Lempke*, 767 F. App'x 151, 152 (2d Cir. 2019).  Although the Second Circuit has not established a firm rule as to whether *all coram nobis* petitions invoke judicial reexamination of a judgment, here, Petitioner's *coram nobis* petition appears to request such reexamination by challenging the effectiveness of his appellate attorney in the course of his appeal process.  *See Smith v. McGinnis*, 208 F.3d 13, 15–16 (2d Cir. 2000) (finding there was "no dispute that" the petitioner's "*coram nobis* petition containing a claim regarding denial of effective assistance of appellate counsel," "if pending within the one-year grace period, would trigger Section 2244(d)(2)'s tolling allowance"); *cf. Santana*, 2018 WL 1229860 at 4* (finding that "a state habeas petition that does not seek reexamination of a conviction or sentence, but instead seeks material to facilitate a post-conviction challenge, is insufficient to toll AEDPA's statute of limitations").

### III.    Disposition of Petitioner's Mixed Petition

Having denied Petitioner's request for a stay, "the Court has only three viable alternate courses of action." *Kaplan*, 274 F. Supp. 3d at 128.  The Court may:  (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits; or (3) allow the petitioner to withdraw his unexhausted claims and proceed with his exhausted claims. *Id*.  For the reasons set forth below, the Court opts to dismiss the petition without prejudice.

The Court declines to dismiss the entire petition on the merits.  This option is appropriate only if the unexhausted claims are "plainly meritless." *See Rhines*, 544 U.S. at 277; *see also Kaplan*, 274 F. Supp. 3d at 129.  However, at this juncture, the Court cannot conclude that Petitioner's unexhausted claims are "plainly meritless."  Exhaustion of state court remedies will likely further develop Petitioner's unexhausted claims.  For example, a Section 440 motion may show additional "off the record" evidence concerning Petitioner's ineffective assistance of trial counsel claim.  Without the benefit of an exhausted record, final dismissal on the merits would be premature and inappropriate. *See Brooks*, 2022 WL 1190456, at *1 (finding it premature to consider the "mixed" ineffective assistance claim meritless where the Section 440 remedy had not yet been utilized).

The Court also declines to allow Petitioner to drop his two ineffective assistance of counsel claims, because Petitioner has not "expressly and unequivocally acknowledged" to the Court that he was "abandoning his unexhausted claims" *Grady v. LeFevre*, 846 F.2d 862, 865 (2d Cir. 1988); *see also Richards v. Harvey*, No. 23-cv-3914, 2025 WL 871666, at *9 (E.D.N.Y. Mar. 20, 2025) (declining to allow petitioner to "delete" his unexhausted claims because he had not unequivocally abandoned those claims).  In fact, considering his *coram nobis* petition is still pending and he still has the option of filing a Section 440 motion, it appears to the Court that

Petitioner has no intention to withdraw these claims.  Accordingly, this course of action is inappropriate.

As a result, only one option remains:  the Court dismisses the petition without prejudice. This path allows Petitioner to exhaust his two ineffective assistance of counsel claims without fear that these claims would be found "second or successive" if he subsequently chooses to file a fully exhausted petition.  *See Slack v. McDaniel*, 529 U.S. 473, 487 (2000) ("A petition filed after a mixed petition has been dismissed [for the failure to exhaust,] before the district court adjudicated any claims, is to be treated as any other first petition and is not a second or successive petition.").  This course of action will not "unreasonably impair the petitioner's right to obtain federal relief."  *Rhines*, 544 U.S. at 278; *Francois*, 2014 WL 1153920, at *4 (finding dismissal without prejudice would not "unreasonably impair petitioner's right to obtain federal relief at a later date" when his *coram nobis* petition was still pending).

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion to stay is DENIED and his petition pursuant to 28 U.S.C. § 2254 is DISMISSED without prejudice.


SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 28, 2025